1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerry Francis Rawson, | No. CV-07-1438-PHX-ROS (LOA) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Rick Mauldin, et. al, | |
| Respondents. | |

This matter arises on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (docket # 1)  Respondents have filed an Answer (docket # 8) to which Petitioner has replied.  (docket # 9)  Thereafter, the Court ordered additional briefing which both parties have submitted.  (dockets ## 13, 14, 15, 17, 20)

Petitioner requests an evidentiary hearing.  However, an evidentiary hearing is not required in this habeas proceeding because Petitioner has not met the standard set forth in 28 U.S.C. § 2254(e)(2), and his claims can be resolved on the existing record.

**I. Background**

  **A. Charges, Plea, and Sentencing**

On April 21, 2004, the State of Arizona filed an Information in the Superior Court of Arizona, Maricopa County, charging Petitioner with two counts of aggravating driving under the influence of intoxicating liquor or drugs ("DUI"), class four felonies.  (docket #  8, Exh. A)  Pursuant to a written plea agreement, on March 31, 2005, Petitioner pled no contest

to one count of aggravated DUI and admitted one prior felony conviction.[1]  (docket # 8, Exhs. B-D)  The State dismissed the second DUI count and its allegation of four other prior felony convictions.  (docket # 8, Exhs. A-D) At the beginning of the March 31, 2005 change of plea hearing, the court[2] inquired whether Petitioner had taken any drugs, alcohol, or medication within the last 24 hours.  (docket # 8, Exh.D at 3)  Petitioner advised the Court that he had taken a prescription medication, Seroquel, but assured the Court that it did not affect his ability to understand the proceedings.  (docket # 8, Exh. D at 3-4) The Court then reviewed the terms of the plea agreement with Petitioner.  (docket # 8, Exh. D at 6-7; Exh. C)  Petitioner advised the court that he had read and discussed the plea agreement with counsel and understood, and agreed to, its terms.  (docket # 8, Exh. D at 6-7)  Petitioner further stated he was neither forced nor threatened to enter the plea and did so voluntarily.  (docket # 8, Exh. D at 7)  The court also advised Petitioner of his constitutional rights and the possible penalties, including a $250 DUI abatement. (docket # 8, Exhs.C, D at 4-6)  The court then accepted Petitioner's plea.  (Respondents' Exh. C at 2)

At the April 28, 2005 sentencing hearing, the court found that Petitioner's prior felony conviction constituted an aggravated factor and sentenced Petitioner to an aggravated term of 6 years' imprisonment, and ordered payment of the $250 DUI abatement. (Respondents' Exhs. E, F at 5)  At the time of sentencing, the court advised Petitioner of his right to seek relief pursuant to Ariz.R.Crim.P. 32 and that he must file a notice of Rule-32 relief within 90 days after entry of judgment and sentence.  (Respondents' Exh. G)

**B.  Rule 32 "of-right" Proceeding**

By pleading no-contest in a non-capital case, Petitioner waived his right to a direct appeal, but retained the right to seek review in an "of-right proceeding" under Arizona Rule

---

[1] Petitioner admitted that he was convicted of aggravated DUI on February 25, 1999 in Maricopa County cause number CR97-7538.  (Respondents' Exh. C at 2)

[2] Commissioner Richard L. Nothwher presided.

of Criminal Procedure 32.  Ariz.R.Crim.P. 17.1(e); Ariz.R.Crim.P. 32.1[3], 32.4.  To commence a Rule 32 of-right proceeding, Petitioner was required to filed a notice of his intent to file a Rule 32 petition within 90 days of entry of judgment and sentence. *See*, Ariz.R.Crim.P. 32.4(a))(establishing a 90-day limit for filing notice of post-conviction relief in an "of-right" proceeding). Thus, Petitioner's notice was due on or about July 26, 2005.

On October 15, 2005, Petitioner sent a letter to the Clerk of the Superior Court, Maricopa County, stating that "[b]ack on July 12, 2005, I sent in a Rule 32 packet requesting the assignment of legal counsel to assist in the preparation of my Rule 32."  (Respondents' Exh. P)  Petitioner explained that he "held off" inquiring about the status of his Rule 32 proceedings because he was accustomed to "things taking longer than expected." (Respondents' Exh. P)  On November 7, 2005, the Honorable Thomas O'Toole issued a Minute Entry stating that the "court did not receive [a Rule 32 packet] and there are no Rule 32 documents from defendant in the court file.  No Rule 32 proceedings are currently pending in this court.  The court takes no further action on defendant's letter." (Respondents' Exh. Q)

Thereafter, on December 13, 2005, Petitioner, proceeding *pro se*, filed notice of review under Rule 32 in which he requested the appointment of counsel.  (Respondents' Exh. G at 2)  Petitioner also asked the court to excuse his untimely filing explaining that he had "sent in a Rule 32 package back in July 2005 which was lost in the mail system somewhere." (Respondents' Exh. G)  Petitioner alternatively argued that his untimely filing should be excused under Ariz.R.Crim.P. 32.1(g) because *Blakely v. Washington*, 542 U.S. 296 (2004) constituted a significant change in the law applicable to his sentence. (Respondents' Exh. G)  Petitioner also presented the following claims for relief: (1) the State violated the plea agreement by imposing "penalties not included in [the] plea or imposed by

---

[3] Arizona Rule of Criminal Procedure 32.1 provides: "Any person who pled guilty or no contest . . . shall have the right to file a post-conviction relief proceeding, and this proceeding shall be known as a Rule 32 of-right proceeding." Ariz.R.Crim.P. 32.1.

the judge;" (2) the State improperly used Petitioner's prior felony convictions both to enhance and aggravate his sentence; (3) the State "used historical priors which were contrary to the definition of historical prior" set forth in A.R.S. § 13-604; and (4) Petitioner was subject to "[o]ngoing cruel and unusual punishment during confinement." (*Id.*)

Without addressing Petitioner's request for counsel, on December 28, 2005, the trial court dismissed the notice of post-conviction relief as untimely. (Respondents' Exh. H) The court found that *Blakely v. Washington*, 542 U.S. 296 (2004) did not constitute a significant change in the law applicable to Petitioner's case which would allow him to file an untimely petition pursuant to Ariz.R.Crim.P. 32.1(g). (Respondents' Exh. H) Specifically, the court noted that *Blakely* was decided before Petitioner's sentencing, the trial court advised Petitioner of his *Blakely* rights before accepting his plea, and Petitioner waived his *Blakely* rights in his plea agreement. (Respondents' Exh. H) The court did not address Petitioner's assertion that his untimely filing should be excused because his notice of Rule 32 relief mailed in July of 2005 was lost in the mail. (*Id.*) The court also did not address the merits of Petitioner's remaining claims for relief. (*Id.*)

On January 26, 2006, Petitioner, proceeding *pro se*, filed a petition for review in the Arizona Court of Appeals. (Respondents' Exh. I) Petitioner argued that the trial court improperly dismissed his Rule 32 proceedings as untimely without addressing his claim that his timely notice mailed in July 2005 was lost in the mail. Petitioner further argued that the trial court erred in failing to appoint counsel which prevented Petitioner from coherently presenting his claims. Petitioner also claimed that: (1) the trial court erred in finding a waiver of his *Blakely* rights; (2) the State erred in alleging his non-dangerous prior felony convictions; (3) the State was improperly seizing 67% of his prison wages under A.R.S. § 31-255, although the plea agreement did not contemplate such a penalty; and (4) trial counsel was ineffective in failing to protect him from an excessive sentence and additional penalties imposed because Petitioner was "medicated" during the change-of-plea and sentencing hearings. (Respondents' Exh. I) On October 19, 2006, Petitioner filed a

supplemental petition expanding the foregoing claims.  Petitioner also added new claims that: (1)  trial counsel was ineffective in failing to explain and examine the factual basis underlying Petitioner's admission of his prior felony conviction; (2) trial counsel was ineffective in general; and (3) the trial court erred in failing to consider Petitioner's history of mental illness and did not adequately investigate his competency to plead no contest. (Respondents' Exh. J)  On January 16, 2007, the Arizona Court of Appeals summarily denied review.  (Respondents' Exh. K)

On February 3, 2007, Petitioner sought review in the Arizona Supreme Court (Respondents' Exh. L) raising the following claims:

> 1.  the trial court erred in denying Petitioner's right to a proper appeal;
>
> 2.  the trial court "double counted" Petitioner's prior felony conviction as a sentence enhancer and an aggravating factor in violation of the Fifth, Sixth, and Fourteenth Amendments;
>
> 3.  the trial court imposed an illegal sentence because the court did not explicitly state "what section of the Arizona Revised Statues [it] was finding the Petitioner guilty of or sentencing him under," and because the court imposed a sentence in excess of the statutory maximum in violation of *Blakely*;
>
> 4. the trial court misapplied A.R.S. § 13-604 because Petitioner's prior felony convictions could not properly be used to enhance his sentence under that section;
>
> 5. trial counsel was ineffective for failing to investigate Petitioner's prior felony convictions and object to the trial court's imposition of an improper sentence; and
>
> 6. Petitioner did not knowingly, intelligently, and voluntarily plead no contest because he is mentally ill and was under the influence of Seroquel, an anti-psychotic medication.

(Respondents' Exh. L) The Arizona Supreme Court summarily denied review on April 12, 2007.  (Respondents' Exh. M)

**C. Petition for Writ of Habeas Corpus**

Thereafter, on July 26, 2007, Petitioner filed the pending Petition for Writ of Habeas Corpus raising the following claims:

> 1.  The trial court misapplied A.R.S. § 13-604 resulting in double counting of Petitioner's prior felony convictions in violation the Fifth, Sixth, and Fourteenth Amendments;

- 5 -

2. Petitioner's sentence violates *Blakely* because the court considered Petitioner's prior felony convictions in determining the sentencing level and then used those same prior felony convictions to aggravate Petitioner's sentence;

3. Petitioner did not knowingly, intelligently, and voluntarily enter the plea because: (a) the trial court accepted his guilty plea despite having been informed that Petitioner was on Seroquel at the time; (b) the State imposed additional penalties that were not part of the plea agreement by "taking 67 % of Petitioner's wages;" (c) the plea agreement did not benefit Petitioner because the statutory maximum sentence for a class four felony is 4.5 years and Petitioner was sentenced to 6 years imprisonment; and

4. trial counsel was ineffective in failing to adequately investigate the facts and issues at the change of plea and sentencing hearings.

(docket # 1)

Respondents assert that the Petition should be dismissed as untimely or, alternatively, because Petitioner's claims are procedurally barred. Without waiving those defenses, Respondents also assert that Petitioner's claims lack merit. Petitioner opposes these arguments.

## II. Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year statute of limitations for a state prisoner to file a petition for writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1).

Title 28 U.S.C. § 2244 provides, in pertinent part, that:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.
The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1)(A). Section 2244(d)(2) provides that the AEDPA limitations period is tolled during the time that "a properly filed application for post-conviction or other collateral review is pending. . . ." 28 U.S.C. § 2244(d)(2).

The statute of limitation analysis under § 2244(d) begins with a determination of when Petitioner's conviction became final under § 2244(d)(1)(A). By pleading no contest,

Petitioner waived his right to a direct appeal, but retained the right to seek review in an "of-right" proceeding under Rule 32.  Ariz.Crim.P. 17.1(e); Ariz.R.Crim.P.32.1.  In *Summers v. Schriro*, 481 F.3d 710, 711 (9th Cir. 2007), the Ninth Circuit considered whether Arizona's Rule 32 of-right proceeding is direct or collateral review under the ADEPA.  *Summers* held that an "'of-right proceeding,'available under Arizona Rule of Criminal Procedure 32 to criminal defendants who plead guilty [or no contest], is a form of 'direct review' within the meaning of 28 U.S.C. § 2244(d)(1)." *Id.* at 711.  The *Summers* court explained that "[b]ecause a Rule 32 of-right proceeding is a form of direct review, AEDPA's one-year statute of limitations does not begin to run until the conclusion of the Rule 32 of-right proceeding and review of that proceeding, or until the expiration of the time for seeking such proceeding or review." *Id.*

Pursuant to *Summers*, because Petitioner pled no contest, his conviction became final upon "the conclusion of the Rule 32 of-right proceeding and review of that proceeding, or the expiration of the time for seeking such proceeding or review." *Summers*, 418 F.3d at 711.  Here, Petitioner entered his plea and was sentenced on April 28, 2005.  (Respondents' Exhs. E, F)  Pursuant to Ariz.R.Crim.P. 32.4, Petitioner had ninety days from the entry of judgment and sentence within which to file a notice of Rule-32 review.  Ariz.R.Crim.P. 32.1, 32.4(a)(stating that "[i]n a Rule 32 of-right proceeding the notice must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the final order or mandate by the appellate court in the petitioner's first petition for post-conviction relief proceeding.")

The record reflects that on October 15, 2005, Petitioner sent a letter to the Clerk of the Superior Court, Maricopa County, stating that "[b]ack on July 12, 2005, I sent in a Rule 32 packet requesting the assignment of legal counsel to assist in the preparation of my Rule 32." (Respondents' Exh. P)  Petitioner explained that he "held off" inquiring about the status of his Rule 32 proceedings because he was accustomed to "things taking longer than expected."  (Respondents' Exh. P) On November 7, 2005, the Honorable Thomas O'Toole

1   advised Petitioner that the "court did not receive [a Rule 32 packet] and there are no Rule 32

2   documents from defendant in the court file.  No Rule 32 proceedings are currently pending

3   in this court.  The court takes no further action on defendant's letter."  (Respondents' Exh.

4   Q)

5        Thereafter, on December 13, 2005, Petitioner filed a notice of Rule-32 relief which

6   was beyond the 90-day deadline set forth in Ariz.R.Crim.P. 32.4.  (Respondents' Exh. G)

7   Petitioner asked the state court to excuse his untimely filing because he had attempted to file

8   a timely notice of Rule-32 relief in July of 2005, but it had apparently been lost in the mail.

9   (Respondents' Exh. G)  Petitioner alternatively argued that his untimely filing should be

10  excused under Ariz.R.Crim.P. 32.1(g) because *Blakely v. Washington*, 542 U.S. 296 (2004)

11  constituted a significant change in the law applicable to his sentence.  (Respondents' Exh.

12  G)

13       On December 28, 2005, the trial court dismissed the petition for post-conviction relief

14  as untimely.  (Respondents' Exh. H) The court found that *Blakely v. Washington*, 542 U.S.

15  296 (2004), did not constitute a significant change in the law applicable to Petitioner's case

16  which would allow him to file an untimely petition pursuant to Ariz.R.Crim.P. 32.1(g).

17  (Respondents' Exh. H)  The court did not address Petitioner's alternative argument that he

18  had attempted to file a timely notice of Rule-32 relief in July of 2005 that was lost in the

19  mail.

20       Respondents argue that because Petitioner did not file a notice of Rule-32 relief

21  within the 90-day time period, his conviction became final "upon the expiration of the time

22  for seeking [Rule 32] relief," or on June 26, 2005.  Therefore, Respondents state, the

23  AEDPA limitations period commenced the following day and expired on June 27, 2006.[4]

24  _____

25       [4]Respondents further argue that Petitioner is not entitled to tolling under § 2244(d)(2),
    because his notice of Rule-32 review filed on December 13, 2005 was untimely and, therefore,
26  not properly filed.  (docket # 8 at 7) Respondents are correct that an untimely notice of post-
27  conviction relief or other collateral review is not properly filed under § 2244(d)(2) and,

28                                                                    - 8 -

1  (docket # 8 at 6)  Thus, Petitioner's federal petition for writ of habeas corpus filed on July

2  26, 2007, is untimely.

3          Petitioner, on the other hand, argues that under the mailbox rule announced in

4  *Houston v. Lack*, 487 U.S. 266, 270-76 (1988), the "legal filing date" of his notice of Rule-

5  32 review is July 12, 2005, the date on which he mailed his first "Rule 32 packet."  (docket #

6  9)  If Petitioner's Rule 32-of right proceeding is considered filed on July 12, 2005, then it

7  was timely filed under Rule 32.4 and Petitioner's conviction did not become final on direct

8  review until the conclusion of the Rule 32 of-right proceeding, or on April 12, 2007 when

9  the Arizona Supreme Court denied review.  (Respondents' Exh. M); *See, Summers*, 481 F.3d

10  at 711; 28 U.S.C. § 2244(d)(1)(A).  Under this line of argument, AEDPA's one-year

11  limitations period would have commenced on April 13, 2007 and Petitioner's § 2254

12  Petition filed on July 26, 2007 (docket # 1) would be timely.   In other words, the timeliness

13  of Petitioner's § 2254 petition hinges on when his notice is deemed filed in his Rule 32 of-

14  right proceeding.  If the notice in Petitioner's Rule 32 of-right proceeding is considered filed

15  on July 12, 2005, then his present federal § 2254 petition is timely.  If, as Respondents

16  argue, the Rule 32 of-right notice was not filed until December 13, 2005, Petitioner's § 2254

17  petition is untimely.  The resolution of this issue turns on the application of the prison mail

18  box rule to determine the filing date of Petitioner's notice in his Rule 32 of-right proceeding.

19          ***Prison Mail Box Rule***

20

21  ──────────────

22  therefore, does not toll the AEDPA limitations period.  *See, Pace v. DiGuglielmo*, 544 U.S. 408,

23  414-417 (2005).   The issue of tolling is premature because the date on which the AEPDA
   limitations period commenced is at issue.  Moreover, tolling under § 2244(d)(2) may not apply

24  at all on the facts of this case.  Because Petitioner pled no-contest, his Rule 32 proceeding
   qualified as an "of right" proceeding which the *Summers* court held is a form of direct, not

25  collateral, review.  *Summers*, 481 F.3d at 713, 716.  Tolling under § 2244(d)(2) applies to

26  petitions for collateral or other post-conviction review.  Thus, under *Summers*, § 2244(d)(2)
   may not even apply to Petitioner's Rule 32 of-right proceeding which is a form of direct review.

27  *See, Summers*, 481 F.3d at 713, 716.

28                                          - 9 -

1    In *Houston v. Lack*, 487 U.S. 266 (1988), the Supreme Court established the prison

2    mailbox rule. *Id.* at 270.  Interpreting Federal Rules of Appellate Procedure 3(a) and

3    4(a)(1), the Supreme Court held that a *pro se* petitioner's notice of appeal should be deemed

4    filed from the time a prisoner delivers it to prison authorities for forwarding to the district

5    court. *Id.*  The rule is premised on the *pro se* prisoner's mailing of legal documents through

6    the conduit of "prison authorities whom he cannot control and whose interests might be

7    adverse to his." *Miller v. Sumner*, 921 F.2d 202, 203 (9th Cir. 1990), *superceded by statute in*

8    *Koch v. Ricketts*, 68 F.3d 1191, 1193 (9th Cir. 1995).  The *Houston* Court explained that *pro*

9    *se* prisoners, unlike other litigants, are unable to "monitor the processing of their notices of

10   appeal," are precluded from traveling directly to the courthouse to ensure timely filing, and

11   must "entrust the forwarding of [their] notice[s] of appeal to prison authorities whom [they]

12   cannot control or supervise and who may have incentive to delay." *Id.* at 270-71.  "No

13   matter how far in advance a prisoner delivers his notice to the prison authorities, he can

14   never be sure that it will ultimately get stamped and 'filed' on time." *Id.* at 271.

15        The Ninth Circuit has adopted the mailbox rule and extended it to the filing of federal

16   and state petitions for writ of habeas corpus for purposes of calculating tolling time under

17   AEDPA, 28 U.S.C. § 2244(d)(2).  In *Saffold,* the Ninth Circuit held that the mailbox rule

18   applies with equal force to the filing of state as well as federal petitions, because "[a]t both

19   times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is

20   powerless and unable to control the time of delivery of documents to the court." *Saffold v.*

21   *Newland*, 224 F.3d 1087, 1091 (9th Cir. 2000), *amended by* 250 F.3d 1262, 1268 (9th Cir.

22   2000), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002).  *See also,*

23   *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000) (holding that the mailbox rule applies

24   to determine whether state petition for post-conviction relief was filed as to toll the AEDPA

25   limitations period, thus post-conviction petition that was transmitted to prison authorities

26   two days before the AEDPA deadline tolled the limitations period even though the state

27   court treated the petition as filed two days after the deadline).

28

1      The Ninth Circuit has also held that the mailbox rule applies even where a prisoner's

2   petition is never received or filed by the court. *Huizar v. Casey*, 273 F.3d 1220, 1222-23 (9th

3   Cir. 2001).  In such a case, "[a] prisoner who delivers a document to prison authorities gets

4   the benefit of the prison mailbox rule, as long as he diligently follows up once he has failed

5   to receive a disposition from the court after a reasonable period of time."  *Huizar*, 273 F.3d

6   at 1223) (finding petitioner was reasonably diligent when, after receiving no response from

7   the court two months after sending his packet, he wrote the court-but heard nothing back.

8   Petitioner then waited an additional twenty-one months, "not an unusually long time to wait

9   for a court's decision," before sending another petition.)

10      Indeed, the Ninth Circuit has extended the mailbox rule to a variety of circumstances.

11   *See e.g.*, *Hostler v. Groves*, 912 F.2d 1158, 1161 (9th Cir. 1990) (stating that "[g]iven the

12   broad language of *Houston* and its important policy concerns, we conclude that *Houston*

13   applies to notices of appeal filed in nonhabeas civil cases by incarcerated prisoners acting

14   *pro se*."); *Ellis v. City of San Diego*, 176 F.3d 1183, 1188 (9th Cir. 1999) (applying mailbox

15   rule to notice of appeal from dismissal of civil rights complaint); *James v. Madison St. Jail*,

16   122 F.3d 27 (9th Cir. 1997) (applying *Houston* to filing of inmate trust accounts statements);

17   *Caldwell v. Amend*, 30 F.3d 1199 (9th Cir. 1994) (applying *Houston* to filing of a Rule 50(b)

18   motion).

19      However, the Ninth Circuit has not specifically addressed whether the mailbox rule

20   applies to determine whether a notice in an appeal of-right proceeding was timely filed for

21   purposes of determining when the AEDPA limitations period commences under 28 U.S.C. §

22   2244(d)(1)(A), the issue in this case.  The policy behind the mailbox rule, addressing "the

23   inherent disadvantage suffered by *pro se* prisoners in their ability to monitor the course of

24   their litigation," *Sulik v. Taney County*, 316 F.3d 813, 815 (8th Cir. 2003), supports its

25   application in such a situation.  Additionally, Arizona, has adopted the mailbox rule

26   announced in *Houston* and applies it to determine the date upon which a notice of appeal is

27   filed, *Mayer v. State*, 184 Ariz. 242, 244, 908 P.2d 56, 58 (Az.Ct.App. 1995)(adopting the

28                                          - 11 -

1   mailbox rule), and the date on which a notice of post-conviction relief is filed under Rule 32,

2   *State v. Rosario*, 195 Ariz. 264, 987 P.2d 226 (Az.Ct.App. 1999).

3         In this case, Petitioner, a *pro se* prisoner, was "powerless and unable to control the

4   delivery of documents to the court." *Anthony*, 236 F.3d at 575 (citation omitted). In view of

5   the rationale underlying the mailbox rule, Arizona's adoption of that rule, and the Ninth

6   Circuit's broad application of that rule, the Court finds that, for purposes of determining the

7   date on which the AEDPA limitations period commenced under 28 U.S.C. § 2244(d)(1), the

8   mailbox rules applies to determine the filing date of Petitioner's notice his Rule 32 of-right

9   proceeding.

10        Having determined that the mailbox rules applies, the Court must determine whether

11  Petitioner benefits from that rule.  To benefit from the mailbox rule, a prisoner must satisfy

12  two requirements.  *Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).  First, he

13  must be proceeding without counsel. *Saffold*, 250 F.3d at 1265 (holding that mailbox rule is

14  available to *pro se* petitioners).  Second, he must deliver the pleading to prison authorities

15  within the limitations period.  *Houston*, 487 U.S. at 273; *Miller v. Sumner*, 921 F.2d 202 (9th

16  Cir. 1990), *superceded by statute in Koch v. Ricketts*, 68 F.3d 1191, 1193 (9th Cir. 1995)

17  (stating that the mailbox rule does not apply when a Petitioner does "not hand the

18  [document] over to prison authorities and depend on them to file it in a timely manner.") In

19  this case, because Petitioner's July 2005 pleading was never received nor filed by the state

20  court, he must also show that "he diligently follow[ed] up once he . . . failed to receive a

21  disposition from the court after a reasonable period of time." *Huizar*, 273 F.3d at 1222-23

22  (finding petitioner reasonably diligent when, after receiving no response from the court two

23  months after he sent in his packet, he wrote the court - but heard nothing back.  Petitioner

24  then waited an additional twenty-one months before sending another petition.)

25        Petitioner satisfies the first requirement because the record reflects that he was

26  proceeding without counsel.  (Respondents' Exhs. P, G)  The record also reflects that

27  Petitioner was reasonably diligent because, assuming he attempted to file his "Rule 32

28

1    packet" on July 12, 2005, his written inquiry about that packet made only three months later

2    on October 15, 2005, was within a reasonable period of time.  (Respondents' Exh. P) After

3    the trial court's November 7, 2005 response, Petitioner acted diligently by filing a Rule-32

4    petition on December 13, 2005.  In his December 13, 2005 pleading, Petitioner again raised

5    the issue of his attempt to file a Rule-32 packet in July 2005.  The foregoing demonstrates

6    that Petitioner diligently followed up with the court within a reasonable time after failing to

7    receive a disposition of his Rule-32 packet allegedly mailed on July 12, 2005.  *See*, *Huizar*,

8    273 F.3d at 1222-23.

9          Thus, the Court must next determine: (1) whether Petitioner delivered his Rule-32

10    pleading to prison authorities for mailing; and (2) whether he did so within the relevant

11    limitations period, before the expiration of the deadline to file his notice of Rule 32 relief

12    under Ariz.R.Crim.P. 32.4.  *Houston*, 487 U.S. at 273; Ariz.R.Crim.P. 32. 4; *Summers*, 481

13    F.3d at 716.  Petitioner claims that he "delivered [his Rule 32 petition] to the mail officer."

14    (docket # 13 at 2)

15          The record contains a copy of an October 15, 2005 letter to the Clerk of the Superior

16    Court, Maricopa County in which Petitioner states that "[b]ack on July 12, 2005, I sent in a

17    Rule 32 packet requesting the assignment of legal counsel to assist in the preparation of my

18    Rule 32."  (Respondents' Exh. P)  However, in his December 13, 2005 notice of Rule 32

19    relief, Petitioner only refers to "a Rule 32 package sent back in *July 2005* which was lost in

20    the mail system somewhere."  (Respondents' Exh. G) (emphasis added).  If Petitioner gave

21    his Rule-32 packet to prison authorities for mailing after July 26, 2005, it would have been

22    untimely under Ariz.R.Crim.P. 32.4(a).[5]  Thus, the precise date in July 2005 on which

23    _____

24          [5] Judgment was entered and Petitioner was sentenced on April 28, 2005.  (Respondents'
     Exhs. E, F)  Pursuant to Ariz.R.Crim.P. 32, Petitioner had ninety days from the entry of
25    judgment and sentence within which to file a notice of Rule 32 review.  Ariz.R.Crim.P. 32.1,
     32.4(a(stating that "[i]n a Rule 32 of-right proceeding the notice must be filed within ninety
26    days after the entry of judgment and sentence or within thirty days after the issuance of the final
27    order or mandate by the appellate court in the petitioner's first petition for post-conviction relief

28                                         - 13 -

1   Petitioner gave his Rule-32 pleadings to prison officials for mailing is significant.  In his §

2   2254 Petition, Petitioner does not refer to a notice of Rule 32 relief dated July 12, 2005.

3   (docket # 1)  However, in his Reply, Petitioner argues that the "legal filing date [of his Rule

4   32 notice] was July 12, 2005, two weeks prior to the expiration of the 90 day time limit."

5   (docket # 9 at 2)  Although Petitioner has not submitted an affidavit specifically stating that

6   he gave his Rule 32 notice to prison officials for mailing on July 12, 2005, the Court "must

7   construe *pro se* habeas filing liberally, *Maleng v. Cook*, 490 U.S. 488, 493 (1989), and may

8   treat the allegations of a verified complaint or petition as an affidavit, *McElyea v. Babbitt*,

9   833 F.2d 196, 197-98 (9th Cir. 1987)." *Laws v. LaMarque*, 351 F.3d 919, 924 (9th Cir. 2003)

10  (finding that the verified state petition attached to petitioner's reply was entitled to same

11  weight an a affidavit.)  In view of this rule, the Court finds that the record contains some

12  evidence suggesting that on July 12, 2005, Petitioner turned over to prison authorities for

13  mailing to the Arizona Superior Court a notice of Rule-32 relief to commence his of-right

14  proceedings.

15      In their Supplemental Response, Respondents attach outgoing legal mail logs for July

16  2005 from the Arizona Department of Corrections Florence East Unit.  (docket # 14, Exh.

17  A)  The July 2005 mail log from the Florence East Unit, where Petitioner was housed,

18  contains no record of Petition mailing a Rule 32 petition on July 12, 2005 or any other day

19  in July.  (Respondents' Exh. A ) The prison's mail log is "strong evidence" to refute

20  Petitioner's claim that he mailed a PCR petition before the state filing deadline expired.

21  *Huizar*, 273 F.3d at 1224. (stating that the prison's log of outgoing mail provides strong

22  evidence of the date [a prisoner] handed over his petition [for filing] . . . .").  This is

23  particularly true because Arizona Department of Correction's ("ADOC") regulations require

24  all inmate legal mail to be logged.  (docket # 14, Exh. B, docket # 13)

25

26  _____

27  proceeding.").

28                                          - 14 -

1    The Court finds that the prison mail log for July 2005 is strong evidence that

2    Petitioner did not give a Rule 32 petition to prison officials for mailing during that time.

3    Petitioner asserts that a fellow inmate, Steven Scott, was with him when he delivered his

4    Rule-32 petition to the mail officer.  (docket # 13 at 2)  Petitioner states that Mr. Scott has

5    "been switched to another yard" but does not explain why he made no effort to contact Mr.

6    Scott to obtain a statement from him.   Moreover, Petitioner does not allege the specific date

7    upon which he gave his Rule-32 petition to the mail officer.  In view of the prison mail log

8    which contains no evidence of Petitioner mailing a Rule-32 petition in July of 2005, the

9    Court concludes that he did not do so.

10    Accordingly, Petitioner's Rule-32 petition was untimely and, consequently, his 2254

11    Petition is also untimely.   In an abundance of caution, the Court will consider the merits of

12    Petitioner's claims.

13    **III.  Exhaustion and Procedural Default**

14    Respondents assert that all of Petitioner's claims are unexhausted and procedurally

15    defaulted because he did not properly present them to the State courts.  (docket # 8 at 9) "An

16    application for a writ of habeas corpus may be denied on the merits, notwithstanding the

17    failure of the applicant to exhaust the remedies available in the Court of the State."  28

18    U.S.C. § 2254(b)(2).  As discussed below, because Petitioner's claims lack merit, the Court

19    need not resolve the exhaustion issue.

20    **IV.  Analysis of Petitioner's Claims**

21    **A.  Standard of Review**

22    In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

23    ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner

24    applications in order to prevent federal habeas 'retrials' and to ensure that state-court

25    convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S.

26    685, 693 (2002).

27

28    - 15 -

1    Under the AEDPA, a state prisoner "whose claim was adjudicated on the merits in

2  state court is not entitled to relief in federal court unless he meets the requirements of 28

3  U.S.C. § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 638 (2003).  Thus, a state prisoner is not

4  entitled to relief unless he demonstrates that the state court's adjudication of his claims

5  "resulted in a decision that was contrary to, or involved an unreasonable application of,

6  clearly established Federal law, as determined by the Supreme Court of the United States" or

7  "resulted in a decision that was based on an unreasonable determination of the facts in light

8  of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2); *Carey*

9  *v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 653 (2006); *Lockyer v. Andrade*, 538 U.S. 63,

10 75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006).  To determine whether

11 a state court ruling was "contrary to" or involved an "unreasonable application" of federal

12 law, courts must look exclusively to the holdings of the Supreme Court which existed at the

13 time of the state court's decision.  *Mitchell v. Esparza*, 540 U.S. 12, 15-15 (2003);

14 *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Accordingly, the Ninth Circuit has

15 acknowledged that it cannot reverse a state court decision merely because that decision

16 conflicts with Ninth Circuit precedent on a federal constitutional issue.  *Brewer v. Hall*, 378

17 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

18    Even if the state court neither explained its ruling nor cited United States Supreme

19 Court authority, the reviewing federal court must nevertheless examine Supreme Court

20 precedent to determine whether the state court reasonably applied federal law.  *Early v.*

21 *Packer*, 537 U.S. 3, 8 (2002).  The United States Supreme Court has expressly held that

22 citation to federal law is not required and that compliance with the habeas statute "does not

23 even require awareness of our cases, so long as neither the reasoning nor the result of the

24 state-court decision contradicts them." *Id.*

25    A state court's decision is "contrary to" federal law if it applies a rule of law "that

26 contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of

27 facts that are materially indistinguishable from a decision of [the Supreme Court] and

28                                        - 16 -

1  nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v.*

2  *Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411

3  (2000).

4        A state court decision involves an "unreasonable application of" federal law if the

5  court identifies the correct legal rule, but unreasonably applies the rule to the facts of a

6  particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005).   An

7  incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*,

8  541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the

9  state's court's decision is objectively unreasonable.") "It is not enough that a federal habeas

10  court, in its independent review of the legal question," is left with the "firm conviction" that

11  the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75.   Rather, the petitioner

12  must establish that the state court decision is "objectively unreasonable." *Middleton v.*

13  *McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

14        Where a state court decision is deemed to be "contrary to" or an "unreasonable

15  application of" clearly established federal law, the reviewing court must next determine

16  whether it resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th

17  Cir. 2002).  Habeas relief is warranted only if the constitutional error at issue had a

18  "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

19  *Abrahamson*, 507 U.S. 619, 631 (1993).  In § 2254 proceedings, the federal court must

20  assess the prejudicial impact of a constitutional error in a state-court criminal proceeding

21  under *Brecht's* more forgiving "substantial and injurious effect" standard, whether or not the

22  state appellate court recognized the error and reviewed it for harmlessness under the

23  "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S.

24  18, 24 (1967).  *Fry v. Pliler*, ___ U.S.___, 127 S.Ct. 2321, 2328 (2007).  The *Brecht*

25  harmless error analysis also applies to habeas review of a sentencing error.  The test is

26  whether such error had a "substantial and injurious effect" on the sentence. *Calderon v.*

27  *Coleman*, 525 U.S. 141, 145-57 (1998) (holding that for habeas relief to be granted based on

28

1   constitutional error in capital penalty phase, error must have had substantial and injurious

2   effect on the jury's verdict in the penalty phase.); *Hernandez v. LaMarque*, 2006 WL

3   2411441 (N.D.Cal., Aug. 18, 2006) (finding that, even if the evidence of three of petitioner's

4   prior convictions was insufficient, petitioner was not prejudiced by the court's consideration

5   of those convictions because the trial court found four other prior convictions which would

6   have supported petitioner's sentence.)  The Court will review Petitioner's claims under the

7   applicable standard of review.

8           **B.  Ground One - "Double Counting"**

9           In Ground One, Petitioner argues that the trial court misapplied A.R.S. §13-604 by

10  permitting his prior felony conviction to serve as an element of his offense, a sentence

11  enhancing factor, and an aggravating factor.  (docket # 1 at 12)  Petitioner argues that

12  "double counting" his prior conviction violates the Double Jeopardy Clause.  (docket # 1 at

13  19)

14          **1.  Relevant Facts**

15          On March 31, 2005, Petitioner pleaded no contest to aggravated driving under the

16  influence of intoxicants ("DUI"), a class 4 felony, with one prior felony conviction.  (docket

17  # 8, Exhs. B-D) Petitioner admitted he was guilty of aggravated DUI under A.R.S. § 28-

18  1383(A)(1), which prohibits a person from being in actual physical control of a vehicle

19  while impaired to the slightest degree by intoxicants while his driver's license is suspended,

20  revoked, refused, cancelled, or restricted.  (*Id*. at Exh. B); A.R.S. § 28-1383(A)(1).  During

21  the change of plea hearing, Petitioner agreed to the following factual basis for his plea:

22          [B]ack on February 7, 2004, [Petitioner] was operating a vehicle within
            Maricopa County.  He committed a traffic offense by blocking traffic.
23          When he was contacted by officers, they noted signs and symptoms of
            impairment, including [Petitioner] was confused about where he was at.
24          Subsequent breath tests revealed his blood alcohol concentration as a .172.
            At that date [Petitioner's] license was suspended, and he knew or should
25          have known it was suspended.

26          * * *

27          [A]dditionally, since it's the [A.R.S. § 28-1383](A)(1) charge he was

28                                              - 18 -

pleading to, his BAC was .172 and that impaired him to the slightest degree
to operate a motor vehicle.

(docket # 8, Exh. D at 9-10)

Pursuant to the plea agreement, Petitioner agreed to be sentenced pursuant to A.R.S.
§ 13-604, which applies to dangerous or repetitive offenders, (docket # 8, Exh. B, Exh. D at
4), which establishes an enhanced sentencing range for repeat offenders. Petitioner admitted
he was convicted of aggravated DUI in Maricopa County Cause Number CR 97-07538, on
February 25, 1999. (docket # 8, Exhs. B, C, D at 10-11)   In exchange for Petitioner's
admission of his prior felony conviction in CR 97-07538, the State agreed to dismiss its
allegation of four other prior felony convictions, and the allegation of a second count of
aggravated DUI. (docket # 8, Exh. A at 3-4, 7-9; Exh. B at 1)  Petitioner's plea agreement
further stipulated to an aggravated term of 6 years' imprisonment. (Respondents' Exh. B);
*See* A.R.S. § 13-604(A).  Pursuant to the plea agreement, the trial court sentenced Petitioner
to an aggravated term of 6 years' imprisonment. (docket # 8, Exh. F at 5)  In support of the
aggravated sentence, the court considered Petitioner's prior felony convictions as an
aggravated factor. (docket # 8, Exh. F at 5).

### 2.  Discussion

Petitioner claims that the trial court misapplied A.R.S. §13-604 by permitting his
prior felony conviction to serve as an element of his offense, a sentence enhancing factor,
and an aggravating factor. (docket # 1 at 12)  Petitioner argues that "double counting" of his
prior conviction violates the Double Jeopardy Clause, the Due Process Clause, and the Sixth
Amendment. (docket # 1 at 19)  In support of his argument that the trial court misapplied
A.R.S. § 13-604, Petitioner also argues that the trial court should have sentenced him under
A.R.S. § 28-1383, the statute pursuant to which he was charged. (docket # 20 at 4)

To the extent that Petitioner argues that the trial court misapplied state law - either by
misapplying § 13-604 or by failing to sentence him under § 28-1383 - Petitioner's claim is
based on application of state law which is not subject to review by this Court. *See, Estelle v.*

1   *McGuire*, 502 U.S. 62, 67-68 (1991) (explaining that "it is not the province of a federal

2   habeas court to reexamine state-court determinations on state-law questions.").  *See Aponte*

3   *v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1998) (deferring to state court construction of state

4   drug offense sentencing enhancement statute); *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir.

5   1994) (stating that a state court's misapplication of its own sentencing laws does not justify

6   federal habeas corpus relief); *Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993) (state court

7   determination that preparatory offenses constituted prior convictions for enhancement

8   purposes was solely a matter of state law); *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th

9   Cir. 1989) (holding that whether a prior conviction qualifies for sentence enhancement under

10  state law is not a cognizable federal habeas corpus issue.)  Moreover, pursuant to his plea

11  agreement, Petitioner agreed to be sentenced under A.R.S. § 13-604.  (docket # 8, Exhs. B,

12  D)

13         Petitioner cannot transform a state law claim into a federal one by simply citing to the

14  Fifth, Sixth, and Fourteenth Amendments.  *See Little v. Crawford*, 449 F.3d 1075, 1083 n. 6

15  (9th Cir. 2006) ("'We cannot treat a mere error of state law, if one occurred, as a denial of

16  due process; otherwise every erroneous decision by a state court on state law would come

17  here as a federal constitutional question.'") (quoting *Hughes v. Heinze*, 268 F.2d 864, 869-

18  70 (9th Cir. 1959)); *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[A petitioner]

19  may not . . . transform a state-law issue into a federal one merely by asserting a violation of

20  due process.'")   Because Petitioner's assertion that the court misapplied Arizona's

21  sentencing laws does not assert a federal claim, it is not cognizable on habeas corpus review.

22         To the extent that Petitioner asserts a federal claim, the Court finds that he asserts a

23  violation of the Double Jeopardy Clause.  (docket # 1 at 19)  Although Petitioner cites the

24  Due Process Clause, the Supreme Court has held that it does not provide "greater double-

25  jeopardy protection than does the Double Jeopardy Clause." *Sattazahn v. Pennsylvania*, 537

26  U.S. 101, 116 (2003).  Additionally, Petitioner cites the Sixth Amendment, but does not

27  explain in Ground One how the court's actions implicated the Sixth Amendment.

28                                                    - 20 -

1    As discussed below, Petitioner's claim lacks merit.  First, Petitioner's prior felony

2  conviction was not an element of the aggravated DUI offense to which Petitioner pleaded no

3  contest.  A.R.S. § 28-1383(A)(1).   Rather, § 28-1383(A)(1) required the State to prove the

4  Petitioner was in actual physical control of a vehicle while impaired to the slightest degree

5  of intoxicants, and that his driver's license was suspended, restricted, cancelled, refused, or

6  revoked.  See A.R.S. § 28-1383(A), § 28-1381(A).  The State was not required to prove why

7  Petitioner's license was suspended, restricted, cancelled, refused, or revoked.  In other

8  words, Petitioner's prior conviction for aggravated DUI was not an element of the offense.

9    Additionally, contrary to Petitioner's assertion, there is no State or federal prohibition

10  on using the same prior conviction to enhance and aggravate a defendant's sentence.  *See*

11  *State v. LeMaster*, 137 Ariz. 159, 669 P.2d 592, 599 (Ariz.Ct.App. 1983) (holding that "the

12  trial court did not err in using appellant's prior felony conviction and the fact that he was on

13  parole from that conviction when he committed these offenses as aggravating circumstances.

14  Double jeopardy or double punishment principles do not preclude the trial court from using

15  the prior conviction to impose an enhanced sentence under the recidivist statute, A.R.S. §

16  13-604, and to find aggravating circumstances under A.R.S. § 13-702."); *State v. Martinez*,

17  130 Ariz. 80, 81, 634 P.2d 7, 8 (Ariz.Ct.App. 1981). Neither Arizona nor federal law

18  prohibit a court from using a prior conviction to first enhance the sentencing range, and then

19  to aggravate the sentence within that enhanced range.  *Compare*, A.R.S. § 13-

20  702(C)(1)&(2)(forbidding this sort of double counting only when what triggered the

21  enhanced sentence stemmed from the threatened or actual infliction of serious physical

22  injury or the possession, use, or threatened use of a deadly weapon or dangerous instrument

23  during the commission of a crime); and *State v. Gomez*, 211 Ariz. 494, 502 n. 9, 123 P. 3d

24  1131, 1139 (2005) (same); *United States v. Narte*, 197 F.3d 959, 964-65 (9th Cir. 1999).

25    Finally, Petitioner fails to establish a violation of the Double Jeopardy Clause.  The

26  guarantee against double jeopardy protects against (1) a second prosecution for the same

27  offense after acquittal, (2) a second prosecution for the same offense after conviction, and

28

- 21 -

1    (3) multiple punishments for the same offense. *United States v. DiFrancesco*, 449 U.S. 117,

2    129 (1980).  The Supreme Court has "repeatedly upheld recidivism statutes against

3    contentions that they violate constitutional strictures dealing with double jeopardy . . . ."

4    *Parke v. Raley*, 506 U.S. 20, 27 (1992) (citing cases).   The Supreme Court has explained

5    that "the enhanced punishment imposed for the later offense 'is not to be viewed as either a

6    new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty

7    for the latest crime, which is considered to be an aggravated offense because a repetitive

8    one.'"  *Witte v. United States*, 515 U.S. 389, 400 (1995) (*quoting Gryger v. Burke*, 334 U.S.

9    728, 732 (1948)).

10        "[I]f it is self-evident that a state legislature intended to authorize cumulative

11    punishments, a court's inquiry is at an end." *Ohio v. Johnson*, 467 U.S. 493, 499 n. 8 (1984).

12    Here, the Arizona Legislature intended to punish repeat offenders more severely than first

13    time offenders by establishing an enhanced sentencing range for repeat offenders. *See*

14    A.R.S. § 13-604.  Within that enhanced range, trial courts have the option of imposing

15    aggravated sentences, and may consider a defendant's prior felony conviction in selecting

16    the appropriate sentence.  A.R.S. § 13-702(C)(11).  This sentencing scheme does not punish

17    a defendant repeatedly for his prior felony conviction, but rather requires a harsher sentence

18    for any future crimes he commits.  Because the sentencing scheme pursuant to which

19    Petitioner was sentenced does not violate the Double Jeopardy Clause, Ground One does not

20    warrant habeas corpus relief.

21        **C. Ground Two - *Blakely* Violation**

22        In Ground Two, Petitioner asserts that his aggravated sentence violates the Sixth

23    Amendment as construed in *Blakely v. Washington*, 542 U.S. 296 (2004).  (docket # 1 at 20)

24        On post-conviction review, the State court rejected Petitioner's *Blakely* claim:

25           Defendant filed on December 19, 2005, an untimely Notice of Post-
       Conviction Relief.  He seeks relief pursuant to Rule 32.1(g), Arizona Rules

26        of Criminal Procedure, claiming that *Blakely v. Washington*, 542 U.S. 296 (2004),
       is a significant change of law that applies to his case.

27

28                           - 22 -

1

2

3

        On March [3]1, 2005, the Court advised Defendant of his *Blakely* rights before accepting his plea of no contest.  Defendant also waived these rights in the Plea Agreement that he signed on that date.  He has not shown that he is entitled to relief under *Blakely*.

(docket # 8, Exh. H)

        As discussed below, Petitioner has not established that the State court's decision was contrary to, or an unreasonable application of, federal law.

        In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. 466.  Thereafter, in *Blakely*, the Supreme Court extended the rule of *Apprendi* to judicial fact-finding in the sentencing phase.  *Blakely v. Washington*, 542 U.S. 296 (2004).  Here, Petitioner argues that his sentence violates *Blakely* because his prior conviction, which formed the basis of a sentencing enhancement, was not found beyond a reasonable doubt by a jury.  The *Blakely* Court's rule regarding the sentencing phase does not apply to "the fact of a prior conviction" *Id.*  After the Supreme Court decided *Blakely*, the Ninth Circuit, in *United States v. Quintana-Quintana*, 383 F.3d 1052 (9th Cir. 2004), confirmed that its previous decision in *United States v. Pacheco-Zepeda*, 234 F.3d 411 (9th Cir. 2001), remains good law.  In *Pacheco-Zepeda*, the court held that the government need not prove beyond a reasonable doubt the existence of a defendant's prior convictions.  *Id.* at 414-415 (noting that "*Apprendi* held that all prior convictions . . . were exempt from *Apprendi's* general rule and, under *Almendarez-Torres*, may continue to be treated as sentencing factors.")  In *Blakely*, the Supreme Court specifically retained the exception for prior convictions which was established in *Apprendi*.

        In view of the foregoing, Petitioner did not have a Sixth Amendment right to have a jury determine the existence of his prior convictions beyond a reasonable doubt.  Moreover, Petitioner admitted his prior conviction in the plea agreement and during the change of plea

- 23 -

hearing.  Accordingly, Petitioner's claim fails because *Blakely* does not apply to a

sentencing enhancement based on a prior conviction.

Additionally, Petitioner stipulated to an aggravated sentence and expressly waived his

*Blakely* rights to have a jury determine aggravating factors.  (docket # 8, Exh. D at 8-9)  In

*Blakely*, the Supreme Court held that a defendant may waive the right to have a jury, as

opposed to a trial judge, determine the existence of aggravating factors.  *Blakely*, 542 U.S. at

310.  Specifically, the Court stated that:

> Justice Breyer argues that *Apprendi* works to the detriment of criminal
> defendants who plead guilty by depriving them of the opportunity to argue
> sentencing factors to a judge.  But nothing prevents a defendant from
> waiving his *Apprendi* rights.  When a defendant pleads guilty, the State is
> free to seek judicial sentence enhancements so long as the defendant either
> stipulates to the relevant facts or consents to judicial factfinding.  If
> appropriate waivers are secured, are procured, States may continue to offer
> judicial factfinding as a matter of course to all defendants who plead guilty.

*Blakely*, 542 U.S. at 310 (citations omitted).

Finally, there is no evidence that Petitioner was forced to accept the *Blakely* waiver.

The fact that Petitioner faced more severe consequences if he proceeded to trial, and lesser

punishment if he accepted the plea agreement, does not render the plea process

unconstitutional or coercive.  *U.S. v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002).  Moreover,

during the change of plea hearing, Petitioner affirmed that he was not forced or threatened

"in any way" to plead no contest. (docket # 8, Exh. D at 7)  Petitioner's waiver of his

*Blakley* rights comports with the Constitution and there is no evidence that Petitioner was

coerced to waive those rights.

**D.  Ground Three - Voluntariness of Plea Agreement**

In Ground Three, Petitioner argues that: (a) he did not knowingly, intelligently, and

voluntarily enter his plea of no contest because he ingested the drug Seroquel[6] before the

---

[6] Quetiapine, marketed under the brand name Seroquel, "is used to treat the symptoms
of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in
life, and strong or inappropriate emotions).  It is also used to treat episodes of mania (frenzied,

1   change of plea hearing; (b) after Petitioner's conviction, the State began garnishing 67 % of

2   his wages which violates Due Process because the plea agreement did not provide for that

3   penalty; (c) he received "no benefit" from the plea agreement because the statutory

4   maximum for a class 4 felony is 4.5 years, but Petitioner was sentenced to six years'

5   imprisonment.  (docket # 1 at 25, docket # 9 at 12-14)

6   **1.  Ground III(a) - Voluntariness of Plea**

7        In Ground III(a), Petitioner asserts that he did not knowingly, intelligently, and

8   voluntarily plead no contest because he ingested Seroquel before the change of plea hearing.

9   (docket # 1 at 25)

10        Whether a particular waiver was made "knowingly and voluntarily" is determined by

11  looking to the circumstances surrounding the signing and entry of the plea agreement. *See*

12  *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991). The Supreme Court has stated

13  that where "a defendant is represented by counsel during the plea process and enters his plea

14  upon the advice of counsel, the voluntariness of the plea depends on whether counsel's

15  advice was within the range of competence demanded of attorneys in criminal cases . . . .[A]

16  defendant who pleads guilty upon the advice of counsel may only attack the voluntary and

17  intelligent character of the guilty plea by showing that the advice he received from counsel

18  was [ineffective]." *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (internal quotation marks and

19  citations omitted).

20  _____

21  abnormally excited or irritated mood) or depression in patients with bipolar disorder (manic
    depressive disorder; a disease that causes episodes of depression, episodes of mania, and other
22  abnormal moods). Quetiapine is in a class of medications called atypical antipsychotics. It
    works by changing the activity of certain natural substances in the brain."
23

24  http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698019

25

26

27

28

1    Here, during the change of plea hearing, Petitioner advised the court that he was

2 satisfied with counsel's representation, that all of his questions had been answered, and that

3 he had received sufficient time to fully discuss his case and his plea with counsel.  (docket #

4 8, Exh. D)   Petitioner acknowledged that he had read the plea agreement, discussed it with

5 counsel, and understood its terms.  He also stated that the written plea agreement contained

6 everything he had agreed to and that he was not "forced" or "threatened" to enter the plea.

7 (docket # 8, Exh. D at 6-7)  The court concluded that Petitioner knowingly, intelligently, and

8 voluntarily entered his plea and that it was supported by a factual basis.  (docket # 8, Exh. D

9 at 11)

10    Significantly, Petitioner advised the court that his consumption of Seroquel did not

11 impair his ability to understand the proceedings.

12    The Court:    In the last 24 hours, have you had any drugs, any alcohol or
        any medication whatsoever?

13    The Defendant: Yes, sir.

14    The Court: And what have you been taking?

15    The Defendant: Seroquel.

16    The Court: And that's all prescription?

17    The Defendant: Yes, sir.

18    The Court: Does it affect your ability to understand our court proceedings?

19    The Defendant: No, sir.

20 (docket # 8, Exh. D at 3-4)

21    Although a defendant's representations at the time of the plea are not "invariably

22 insurmountable," when a defendant later challenges the voluntariness of his plea, his

23 representations, as well as any findings made by the trial court accepting the plea,

24 "constitute a formidable barrier."  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

25 Petitioner's avowal that he was not impaired by Seroquel is entitled to "a strong presumption

26 of veracity in [this] subsequent proceeding[] attacking the plea."  *United States v. Ross*, 511

27

28    - 26 -

1   F.3d 1233, 1236 (9th Cir. 2008); *see also Ford v. Secretary of Department of Corrections*,

2   2008 WL 927395, at ** 6-7 (M.D.Fla., April 14, 2008) (concluding that state court's

3   rejection of petitioner's claim that guilty plea was involuntary due to consumption of

4   psychotropic medication was not objectively unreasonable where court inquired regarding

5   medication's effects on petitioner's comprehension of plea proceeding, and petitioner stated

6   he understood the proceeding); *Smith v. Beck*, 2007 WL 2746872, at * 7 (M.D.N.C., Sept.

7   19, 2007) (concluding that state court correctly found petitioner's guilty plea voluntary

8   despite ingestion of Seroquel and another medication because petitioner stated, in open

9   court, that he understood the proceedings and voluntarily pleaded guilty).

10       Petitioner asserts that Seroquel "chemically controls thoughts and actions" and that

11   the record reflects his inability to understand some of the proceedings.  (docket # 20 at 9) In

12   support of this assertion, he cites to defense counsel's response when the trial court asked if

13   Petitioner had five prior felony convictions.  (docket # 20 at 9)  Specifically, counsel

14   responded "that is what we believe."  (docket # 8, Exh.D at 6)  Petitioner suggests that

15   defense counsel's response, which was not unequivocal, indicates that *Petitioner* was in

16   some way confused about the change of plea proceedings.  Petitioner does not cite any other

17   evidence in the record to support his claim that he did not understand the proceedings.

18   Counsel's response regarding Petitioner's prior convictions does not indicate that counsel, or

19   Petitioner, was confused about the proceedings.

20       Petitioner has not presented any evidence refuting his avowal made during the

21   change-of-plea hearing.  Petitioner suggests that the court should have terminated the

22   change-of-plea hearing after discovering that Petitioner had taken Seroquel.  (docket # 1 at

23   25) He asserts that "Seroquel is not aspirin," and "the court just ignored [the fact that

24   Petitioner was taking Seroquel" and continued."  (docket # 1 at 25)  Petitioner's conclusory

25   allegations do not support a claim for habeas corpus relief.  *Blackledge*, 431 U.S. at 73-74

26   ("The subsequent presentation of conclusory allegations unsupported by specifics is subject

27   to summary dismissal, as are contentions that in the face of the record are wholly

28

1  incredible.") The record does not contain any evidence in support of Petitioner's assertion

2  that his plea was involuntary due to his ingestion of Seroquel or for any other reason, thus,

3  Ground III(a) fails.

4      **2. Ground III(b)**

5      In Ground III(b), Petitioner argues that the State violated the Due Process Clause by

6  imposing additional penalties that were not part of the plea agreement.  (docket # 1 at 25)

7  Specifically, Petitioner claims that the Department of Corrections' garnishment of 67 % of

8  his prison wages violates the Due Process Clause of the Fifth Amendment.  Arizona Revised

9  Statute § 31-255 establishes an alcohol abuse treatment fund and directs the director of the

10  Arizona Department of Corrections to "deposit in the fund the lesser of sixty-seven percent

11  or fifty cents per hour of the monies earned by persons sentenced to the department" for DUI

12  offenses."  A.R.S § 31-255.  Petitioner's plea agreement stated that Petitioner would be

13  required to pay $ 250 to the DUI abatement fund.  (docket # 8, Exh. B)  During the change

14  of plea hearing, the court advised Petitioner that a $ 250 payment to the DUI abatement fund

15  "must be imposed."  (docket # 8, Exh. D at 5)   Petitioner indicated that he understood that

16  he would have to pay the $ 250 abatement.  (*Id*.)

17      Petitioner's Due Process challenge to the $250 payment into the DUI abatement fund

18  is not cognizable on habeas corpus review.  First, this claim does not challenge the validity

19  or duration of his confinement and, thus can only be raised in a civil rights action pursuant to

20  42 U.S.C. § 1983.  Habeas corpus proceedings are the proper mechanism for a prisoner to

21  challenge the "legality or duration" of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 484,

22  (1973).  A civil rights action, in contrast, is the proper method of challenging "conditions of

23  ... confinement." *Id*. at 498-99. *See also Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002)

24  (stating that "when the challenge is to a condition of confinement such that a finding in

25  plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983

26  is appropriate."); *Badea v.Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (habeas corpus action may

27

28                                          - 28 -

1    only challenge the legality of conviction or duration of confinement, and a civil rights action

2    is the proper vehicle for challenging conditions of confinement.).

3            Second, whether the Director of the Arizona Department of Corrections properly

4    applied A.R.S. § 31-255 to garnish Petitioner's wages is a matter of state law, which cannot

5    be converted into a federal claim merely by citing the Due Process Clause.  *See, Little*, 449

6    F.3d at 1083 n. 6.

7            To the extent Petitioner asserts that his no contest plea was not knowing, intelligent,

8    and voluntary because when he entered the plea he was unaware that ADOC would garnish

9    his wages, that claim lacks merit.  (docket # 10 at 5)  For a plea to be voluntary, a defendant

10   must be aware of the direct consequences of his plea.  *Brady v. United States*, 397 U.S. 742,

11   748 (1970).  A trial court need not advise defendant of collateral consequences of a plea.

12   *Virsnieks v. Smith*, 521 F.3d 707, 715 (7th Cir. 2008).

13           Whether a consequence is direct or collateral "turns on whether the result represents a

14   definite, immediate and largely automatic effect on the range of the defendant's

15   punishment."  *Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1998) (citations omitted).

16   Generally, when a consequence depends on action by an agency outside the sentencing

17   court's control, the consequence is collateral.  *United States v. Littlejohn*, 224 F.3d 960, 965

18   (9th Cir. 2000) ("[W]here the consequence is contingent upon action taken by an individual

19   or individuals other than the sentencing court - such as another governmental agency or the

20   defendant himself - the consequence is generally collateral.");  *Sanchez v. United States*, 572

21   F.2d 210, 211 (9th Cir. 1977) (consequence is collateral where it is "controlled by an agency

22   which operates beyond the direct authority of the trial judge.")

23           The trial court advised Petitioner that he would have to pay $250 into the DUI

24   abatement fund.  The court was not obligated to advise Petitioner that his prison wages

25   would be garnished because garnishment was not a direct consequence of his plea.  Whether

26   an inmate is even assigned a job within the prison is within the ADOC director's discretion.

27   A.R.S. § 13-251(A)(4) (giving ADOC director "the authority" to require prisoners to engage

28                                              - 29 -

1   in hard labor, stating that, "[e]ach prisoner who does not present a risk to the public and who

2   is not limited by his physical or mental health, may be assigned to a work crew.")

3   Likewise, the Director of the ADOC, not the trial judge, is responsible for garnishing

4   Petitioner's wages.  A.R.S. § 31-255.  In view of the foregoing, because the trial court did

5   not know at the time of Petitioner's plea whether he would earn wages while in prison, the

6   garnishment of wages was not "a definite, immediate and largely automatic effect on the

7   range of [Petitioner's] punishment."  *Torrey*, 842 F.2d at 236.  Thus, garnishing Petitioner's

8   wages is a collateral consequence, and the court's failure to advise Petitioner that his wages

9   could be garnished does not invalidate his plea.  Thus, Ground III(b) fails.

10          **3.  Ground III(c)**

11          In Ground III(c), Petitioner argues that his plea "contained no benefit" for him.

12   (docket # 1 at 25)  Contrary to Petitioner's assertion, he benefitted greatly from his plea.

13   Pursuant to the plea, the State dismissed a second class 4 felony aggravated DUI count it had

14   charged in the information, and dismissed allegations of additional four prior felony

15   convictions.  (docket # 8, Exh. B at 1)   Had Petitioner proceeded to trial and been found

16   guilty as charged, and the State proved at least two prior felony convictions, Petitioner

17   would have faced a sentencing range of between 8 and 12 years for each DUI count.  *See*

18   A.R.S. § 13-604(C).  Although Petitioner may be dissatisfied with his decision to plead no

19   contest, that alone does not warrant habeas corpus relief.  *Bradshaw v. Stumph*, 545 U.S.

20   175, 186 (2005) (stating that "a guilty plea's validity may not be collaterally attacked merely

21   because the defendant made what turned out, in retrospect, to be a poor deal.")  Petitioner

22   received a benefit from his plea and Ground III(c) lacks merit.

23          **E.  Ground Four - Ineffective Assistance of Counsel**

24          In Ground Four, Petitioner argues that trial counsel was ineffective because he failed

25   to adequately investigate the "facts and issues" at the change of plea hearing and at

26   sentencing.  (docket # 1 at 26)  In support of his claim of ineffective assistance, Petitioner

27   relies on "the issues raises in Ground One, Two, and Three."  (docket # 1 at 26)

28                                          - 30 -

1    To establish ineffective assistance of counsel, Movant must establish that: (1)

2 counsel's representation fell below an objective standard of reasonableness; and (2) he was

3 prejudiced thereby. *Strickland v. Washington*, 466 U.S.  668, 688-692 (1984)).  To be

4 deficient, counsel's performance must fall "outside the wide range of professionally

5 competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance,

6 the court engages a strong presumption that counsel rendered adequate assistance and

7 exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690.  "A fair

8 assessment of attorney performance requires that every effort be made to eliminate the

9 distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

10 conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*,

11 466 U.S. at 689.  Review of counsel's performance is "extremely limited." *Coleman v.*

12 *Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998).

13 Acts or omissions that "might be considered sound trial strategy" do not constitute

14 ineffective assistance of counsel.  *Strickland*, 466 U.S. at 689.

15    To establish a Sixth Amendment violation, petitioner must also establish that he

16 suffered prejudice as a result of counsel's deficient performance. *Strickland*, 466 U.S. at

17 691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) (stating that "a violation of

18 the Sixth Amendment right to effective representation is not 'complete' until the defendant

19 is prejudiced.") To show prejudice, petitioner must demonstrate a "reasonable probability

20 that, but for counsel's unprofessional errors, the result of the proceeding would have been

21 different.  A reasonable probability is a probability sufficient to undermine confidence in the

22 outcome." *Strickland*, 466 U.S. at 694; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999);

23 *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  The court may proceed directly to the

24 prejudice prong. *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing

25 *Strickland*, 466 U.S. at 697).  The court, however, may not assume prejudice solely from

26 counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155.  The *Strickland*

27 standard applies equally to a defendant who has been "represented by counsel during the

28                                                            - 31 -

1    plea process and enters his plea upon the advice of counsel . . . ."  *Hill v. Lockhart*, 474 U.S.

2    52, 56-58 (1985).  With respect to guilty pleas, movant "must show that there is a reasonable

3    probability that, but for counsel's errors, he would not have pleaded guilty and would have

4    insisted on going to trial."  *Hill*, 474 U.S. at 59.  As discussed below, Petitioner's claim of

5    ineffective assistance of counsel fails.

6         First, Petitioner's allegations of ineffective assistance are vague and conclusory.

7    *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (finding that Petitioner's vague

8    ineffective assistance of counsel claim was insufficient to state a Sixth Amendment claim).

9    Although Petitioner asserts that counsel failed to "do a proper investigation of facts and

10   issues," he does not identify what "facts" or "issues" counsel should have investigated,

11   identify what information counsel would have uncovered upon further investigation, or

12   explain how the unidentified information would have helped Petitioner.  "A defendant who

13   alleges a failure to investigate on the part of his counsel must allege with specificity what the

14   investigation that would have revealed and how it would have altered the outcome of his

15   trial."  *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted).  *See*

16   *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir. 1986) (stating that "[a] claim of

17   failure to interview a witness may sound impressive in the abstract, but it cannot establish

18   ineffective assistance when the person's account is otherwise fairly known to the

19   defendant.").

20        Petitioner's assertion that counsel was ineffective for failing to raise objections based

21   on the alleged errors asserted in Grounds One, Two, and Three also lacks merit.  The Court

22   has already found that the claims asserted in Grounds One, Two and Three lack merit, thus

23   any objection on those grounds would have been futile.  "Counsel's failure to make a futile

24   motion does not constitute ineffective assistance of counsel."  *James v. Borg*, 24 F.3d 20, 27

25   (9th Cir. 1994).  *See Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir.1992) (finding that a

26   claim of ineffective assistance of appellate counsel on the ground that counsel failed to argue

27

28                                           - 32 -

1    inadequate notice of the charge must fail because counsel "would not have been

2    successful"), *cert. denied*, 508 U.S. 920 (1993).

3          Additionally, Petitioner has not established that counsel's allegedly deficient

4    performance prejudiced him.  He does not argue that, but for counsel's deficient

5    performance, he would have rejected the plea and proceeded to trial.  *See Hill*, 474 U.S. at

6    59.  Rather, he argues that he would have faced 2.5 years imprisonment - the prison term

7    associated with a class 4 felony with no prior felony convictions.  A.R.S. § 13-701.

8    Contrary to Petitioner's assertion, he would not have been sentenced as a first-time offender

9    if he had rejected the plea agreement.  The State alleged five prior felony convictions, and

10   Petitioner would have faced upon to 12 years' imprisonment on each count had he rejected

11   the plea agreement and the State had proved two or more of those convictions.  A.R.S. § 13-

12   604(C).  The plea agreement was beneficial to Petitioner and he has not shown that, but for

13   counsel's deficient performance, he would have rejected the plea and proceeded to trial.

14   Accordingly, his Sixth Amendment claim of ineffective assistance of counsel fails.

15   **V.  Motion for Summary Judgment**

16         Petitioner has also filed a pleading entitled "Motion for Summary Judgment."

17   (docket # 18) He argues that Respondents did not file a timely Supplemental Answer

18   addressing the merits of Petitioner's claims.  Contrary to Petitioner's assertion, Respondents

19   filed a timely Supplemental Answer (docket # 17).  Petitioner has not established any basis

20   for summarily granting his Petition for Writ of Habeas Corpus and his "motion for summary

21   judgment" should be denied.

22         In accordance with the foregoing,

23         **IT IS HEREBY RECOMMENDED** that Petitioner's Motion for Summary

24   Judgment (docket # 18) be **DENIED**.

25         **IT IS FURTHER RECOMMENDED** that Petitioner's Petition for Writ of Habeas

26   Corpus (docket # 1) be **DENIED**.

27

28                                          - 33 -

1    This recommendation is not an order that is immediately appealable to the Ninth

2   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

3   Appellate Procedure, should not be filed until entry of the District Court's judgment.  The

4   parties shall have ten days from the date of service of a copy of this recommendation within

5   which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules

6   72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within

7   which to file a response to the objections.  Failure timely to file objections to the Magistrate

8   Judge's Report and Recommendation may result in the acceptance of the Report and

9   Recommendation by the District Court without further review.  *See United States v. Reyna-*

10  *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual

11  determinations of the Magistrate Judge will be considered a waiver of a party's right to

12  appellate review of the findings of fact in an order or judgment entered pursuant to the

13  Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

14    DATED this 29th day of October, 2008.

15

16

17    _____
                        Lawrence O. Anderson
18                     United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28                                    - 34 -